IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Richard H Hartman II
    Plaintiff

v.                                      CIVIL FILE NO: 8:11-cv-1423-T-26EAJ

Valentine & Kebartas, Inc., et al.
    Defendants
_____/

## VERIFIED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT VALENTINE & KEBARTAS, INC.

Plaintiff Richard H. Hartman, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, respectfully moves this Court to enter an Order of Judgment by Default against Defendant Valentine & Kebartas, Inc (hereinafter "Valentine"), and in support thereof states as follows:

## INTRODUCTION

Plaintiff filed its Complaint and Jury Demand with this Court, incorporated herein by reference, and caused Valentine to be duly served with the Summons and Complaint on July 1, 2011.

On July 6, 2011, Plaintiff was contacted via telephone by Mr. Robert Handley, manager for Valentine & Kebartas, who advised Plaintiff that he had received the

Complaint and Summons, would look into the issue and contact Plaintiff the following day with a settlement offer.

On July 8, 2011, Plaintiff sent an email to Mr. Handley regarding their telephone call, to which Mr. Handley responded that he would contact Plaintiff the following week. (See copies of attached emails, attached hereto as Plaintiff's Exhibits "A" and "B").

Mr. Handley never contacted Plaintiff again after the 7/8/2011 email, and ultimately, Valentine failed to respond to the Complaint and Summons as required by law. Accordingly, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, there was an Entry of Default entered against Valentine on July 29, 2011.

Plaintiff respectfully submits that at this time, he is entitled to a Default Judgment as a matter of law.

## ARGUMENT

### I. STANDARD OF REVIEW

On a Motion for Default Judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court accepts as true the facts alleged in the Complaint. By the Defendant defaulting, it deemed to have admitted the Plaintiff's well-pleaded allegations of fact for the purposes of liability. See Coton v. Televised Visual X-

Ography, Inc., 740 F. Supp. 2d 1299, 1307 (M.D. Fla. 2010) (quoting Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987)).

## II. THE FACTS ALLEGED IN THE COMPLAINT ESTABLISH DEFENDANT VALENTINE'S LIABILITY FOR VIOLATIONS OF THE FDCPA

Plaintiff's Complaint and Jury Demand (Doc 1) is incorporated herein by reference.

Valentine contacted Plaintiff by telephone numerous times, and violated the Fair Debt Collections Practices Act on each and every telephone call, as specified in the Complaint.

Valentine had already received a Cease and Desist letter (Exhibit "A" attached to the Complaint) from Plaintiff in March of 2011, so each and every telephone call from that point forward was in itself a violation of the FDCPA. But the violations did not end with actually placing the calls; each call also contained multiple violations of the FDCPA as well, as specified below.

On June 2, 2011, Plaintiff received a call from a Valentine representative, in which the representative told Plaintiff that Valentine wasn't going to send Plaintiff a collections letter because she had already received Plaintiff's refusal to pay and didn't want to waste her time.

On June 3, 2011, Plaintiff received a telephone call from a different Valentine representative who did not identify himself as a debt collector, implicitly

threatened to take Plaintiff's home, car and other assets if the debt wasn't paid immediately, implied that Valentine would sue Plaintiff, etc. The caller also told Plaintiff that, per the previous day's telephone call, a collections letter had been sent, which turned out to be untrue.

On June 4, 2011, Valentine placed a call to Plaintiff and left a prerecorded message on Plaintiff's answering machine, which included language stating that the call was from a debt collector. As the message was played back, it was unwittingly heard by Ms. Dawn Wurtenberg, who was a guest in Plaintiff's home at the time. Ms. Wurtenburg is not related to Plaintiff and had no reason to be involved in this dispute, and Plaintiff never gave Valentine the authorization to communicate the existence of the alleged debt to her.

On June 6, 2011, another Valentine representative called Plaintiff. This representative advised Plaintiff that a collections letter had been sent to Plaintiff already, but that he would fax a copy to Plaintiff at the conclusion of the call as well, which he did not do. Additionally, during the six minute telephone call, the representative waited until right before the call was terminated and then said, "Oh by the way, I am required to tell you that this call is from a debt collector."

On June 13, 2011, Plaintiff spoke to a Valentine representative twice. The representative did not inform Plaintiff that she was a debt collector during either

call. The representative told Plaintiff that she would mail him a collections letter on that day, but again a letter was never sent.

Valentine's actions violated 15 U.S.C. § 1692g in that it never, at any time, sent Plaintiff written notice of the debt, 15 U.S.C. § 1692c(c) with each and every phone call after having received the cease and desist letter, 15 U.S.C. § 1692e each time it falsely represented to Plaintiff it had mailed him a letter, 15 U.S.C. § 1692e(11) each time it communicated with Plaintiff without identifying itself as a debt collector, 15 U.S.C. § 1692e(5) when it threatened to take Plaintiff's assets and sue Plaintiff, and 15 U.S.C. § 1692c(b) when it communicated the existence of the debt to a third party.

Pursuant to 15 U.S.C. § 1692k, any debt collector who violates the FDCPA is liable to the injured party for statutory damages of up to $1,000, attorney's fees, and court costs. When the violations are willful and repeated, Courts have consistently awarded the injured parties the maximum statutory damages.

Plaintiff respectfully requests this Honorable Court award him the maximum statutory damages permitted under the FDCPA due to the willful and repeated nature of Valentine's violations.

## III. THE FACTS ALLEGED IN THE COMPLAINT ESTABLISH DEFENDANT VALENTINE'S LIABILITY FOR VIOLATIONS OF THE FCCPA

Plaintiff incorporates the forgoing sections herein by reference.

In addition to violating the FDCPA, Valentines actions also violated the Florida Consumer Collection Practices Act. Valentine is a debt collector, not a law firm. When Valentine's representatives threatened to sue Plaintiff, they asserted the existence of a legal right to attempt to collect a debt when they knew that legal right did not exist. Likewise, when the representative threatened to take Plaintiff's house, car and other assets. These actions violated Title XXXIII, Chapter 559, part VI of the Florida Statutes, specifically, FCCPA 559.72(9).

When Valentine communicated the existence of the debt to an uninvolved party, it also violated FCCPA 559.72(5).

By calling Plaintiff on the telephone daily, and three times on 6/13/2011, Valentine also violated FCCPA 559.72(7).

Pursuant to FCCPA 559.77(2) any debt collector who violates the FCCPA is liable to the injured party for statutory damages up to $1,000, as well as court costs and attorney's fees. Similarly to FDCPA violations, Courts have consistently awarded the maximum statutory damages for repeated and willful violations.

Plaintiff respectfully requests this Honorable Court award him the maximum statutory damages permitted under the FCCPA due to the willful and repeated nature of Valentine's violations.

### IV. THE FACTS ALLEGED IN THE COMPLAINT ESTABLISH DEFENDANT VALENTINE'S LIABILITY FOR VIOLATIONS OF THE TCPA

Plaintiff incorporates the foregoing sections herein by reference.

Each and every time Valentine contacted Plaintiff, it was on Plaintiff's cellular telephone, at the telephone number 813-486-8287. With the exception of the calls on June 13, 2011, each call was made using an automated telephone dialing system ("auto-dialer").

Plaintiff never authorized Valentine to contact him on his cellular telephone, and never provided that number to Valentine, or the company who contracted Valentine. Plaintiff has no knowledge of how Valentine obtained his cellular telephone number.

On February 24, 2011, at 5:35 PM, a call was placed to Plaintiff's cellular phone that was placed by an auto-dialer. When Plaintiff answered the phone, there were several seconds of silence, followed by music, and a prerecorded message, which said, "Please hold for the next representative." This pattern was repeated for about 60 seconds before the representative came onto the line. The prerecorded

message did not, at any time, identify the caller. Plaintiff only found out who was calling when a human finally came on the line.

On June 2, 2011, at 9:11 AM, Plaintiff received another phone call on his cellular phone by a Valentine representative, which was placed by an auto-dialer. Like the first call, upon Plaintiff answering the phone, there were several seconds of silence, followed by music and a prerecorded message saying "Please hold for the next representative." Like the 2/24/11 call, the prerecorded message did not at any time identify the caller. Plaintiff learned the identity of the caller when a human finally came on the line.

On June 3, 2011, at 8:40 AM, another call was placed from a Valentine representative to Plaintiff's cellular telephone using an auto-dialer. This call still had several seconds of silence at the beginning, but when the prerecorded message began playing, it was a different message, and did not include music. This message said "This is not a sales call. Please press 1 to retrieve your message." The message did not give the identity of the caller. Upon pressing 1, Plaintiff was eventually transferred to a representative, who finally identified the entity that placed the call.

On June 4, 2011, at 8:11 AM, another call was made to Plaintiff's cellular phone by an auto-dialer. This time, Plaintiff did not answer the call and it went to his voice mail. The message left on Plaintiff's voice mail consisted of several

seconds of silence, followed by a pre-recorded message. The message was 45 seconds long, and while it eventually named Valentine as the caller, it did so at the end of the message rather than in the beginning.

On June 6, 2011, at 12:37 PM, Plaintiff received a telephone call from a Valentine representative, which was placed with an auto-dialer. Like the other calls, this one began with several seconds of silence, followed by a prerecorded message. The message did not identify the caller. The message prompted Plaintiff to dial 1 to retrieve his message. Once Plaintiff dialed 1, he was eventually transferred to a live representative. That representative did not identify the entity that placed the call for another 60 seconds.

Pursuant to 47 U.S.C. § 227 (b)(1)(A)(iii), it is unlawful for any person or business to use an automated telephone dialing system ("auto-dialer") or a prerecorded voice to call any telephone number assigned to a cellular telephone without the express consent of the person being called.

In addition, pursuant to 47 U.S.C. § 227 (b)(2), or more specifically, 47 C.F.R. 64.1200(b)(1), "all artificial or prerecorded telephone messages shall, <u>at the beginning of the message</u>, state clearly the identity of the business, individual or other entity that is responsible for initiating the call (emphasis added).

Each of the forgoing 5 telephone calls contained two separate and distinct violations of the TCPA as alleged in Plaintiff's Complaint; a violation of 47

U.S.C. § 227 (b)(1)(A)(iii) and a violation of 47 U.S.C. § 227 (b)(2), or more specifically, 47 C.F.R. 64.1200(b)(1).

Under the TCPA, a person who violates the forgoing is liable for damages of $500 per violation, however, if the Court finds the Defendant willfully and knowingly violated the forgoing section, the Court may award treble damages to the Plaintiff for each violation (47 U.S.C. § 227(b)(3)).

Valentine is a professional debt collector that, according to its website, has been in business since 1994. The company has over 400 employees and has several telephone call centers across the United States, including in Massachusetts, Idaho and Florida, as well as a call center in the country of Panama. A company does not get to be that large without knowing the various laws governing its industry, and the TCPA is certainly an Act that governs that industry. For Valentine to know the TCPA and still consistently violate numerous sections of the TCPA with each and every telephone call, it would be virtually impossible to describe those violations as anything but willful and knowing.

Even if by some remote chance, Valentine was not aware it was violating the TCPA, the company certainly knew it was using an auto-dialer, it knew it was not including its name in its prerecorded messages, it knew the number it was calling was assigned to a cellular phone, and it knew that it did have Plaintiff's consent to call it. In a recent TCPA lawsuit, the United States District Court for

the Northern District of Illinois stated, "the term acting "willfully" means that "the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute (Sengenberger v. Credit Control Services, Inc., Dist. Court, ND Illinois 2010).

In addition, according to the Ohio Supreme Court,

> "We hold that to establish a *knowing* violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of law." See Charvat v. Ryan, 2007 Ohio 6833, 116 Ohio St.3d 394, 879 N.E.2d 765 (Oh. 2007)

In the same decision, the Court goes on to state:

> "[T]o establish a willful violation of the TCPA for an award of treble damages, a plaintiff must prove that the defendant consciously and deliberately committed or omitted an act that violated the statute, irrespective of any intent to violate the law." See Charvat v. Ryan, 2007 Ohio 6833, 116 Ohio St.3d 394, 879 N.E.2d 765 (Oh. 2007)

When there are multiple TCPA violations in a single telephone call, courts have interpreted 47 U.S.C. § 227(b)(3) as providing for statutory damages per violation, rather than per call, (see Charvat v. Ryan, 858 N.E.2d 845, 168 Ohio App.3d 78, 2006 Ohio 3705). In that decision, in reference to a single telephone call, the Court of Appeals for Ohio, 4th District stated:

> "Thus, appellant is entitled to an award for appellees' violation of Section 227(b)(1)(B), Title 47, U.S.Code, delivery of a message using an artificial or prerecorded voice without the plaintiff's prior express consent; another award for violation of Section 64.1200(b)(1), Title 47, C.F.R., delivery of an artificial or prerecorded telephone message that does not, at the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call."
> <u>Charvat v. Ryan</u>, 858 N.E.2d 845, 168 Ohio App.3d 78, 2006 Ohio 3705 (in ¶ 28).

In addition, courts have also been consistent in awarding treble damages per call when the violations are deemed willful and knowing. (See <u>Sengenberger v. Credit Control Services, Inc.</u>, Dist. Court, ND Illinois 2010). (Also see <u>Stewart v. Regent Asset Management Solutions</u>, No. 1:10 -cv-2552-cc-JFK, 2011 WL 1766018 (N.D. Ga. May 4, 2011).

Finally, the U.S. Court of Appeals for the Eleventh Circuit has held that treble damages under the TCPA are compensatory, rather than punitive, and accordingly, are not prohibited by various states' restrictions on punitive damages. See <u>Alea London Limited v. American Home Services, Inc.</u>, Court of Appeals, 11th Circuit 2011

Pursuant to the TCPA and relevant case law, Plaintiff respectfully requests this Honorable Court award him treble statutory damages for each of the ten TCPA violations specified in the forgoing section, due to the fact they were made willfully and knowingly.

## COSTS OF THIS ACTION

The cost to file this action with this Court was $350.00, which Plaintiff paid by Amscot Money Order, No. 0971327093 to the United District Court for the Middle District of Florida, on June 27, 2011.

The cost to have Valentine served with the Complaint and Summons was $60.00, which Plaintiff paid by Amscot Money Order, No. 0851374569, to Merrill Smallwood, Process Server, on June 27, 2011. (See doc. 6.)(Also see Plaintiff's Exhibit "C" attached hereto).

Plaintiff respectfully requests this Honorable Court award him the costs of this action, pursuant to 15 U.S.C. § 1692k.

## CONCLUSION

WHEREFORE, Plaintiff Richard H. Hartman respectfully requests this Honorable Court enter an Order of Judgment by Default, and award Plaintiff the following:

A. $1,000.00 in statutory damages, pursuant to the FDCPA, 15 U.S.C. § 1692(k).

B. $1,000.00 in statutory damages, Pursuant to the FCCPA, 559.77(2) of the Florida Statutes.

C. $15,000.00 in treble statutory damages for ten separate, willful and knowing violations, pursuant to the TCPA, 47 U.S.C. § 227(b)(3).

D. $410.00 in court costs and service-of-process fees, pursuant to 15 U.S.C. § 1692k and Chapter 559.77(2) of the Florida Statutes.

E. Such other equitable relief as the Court deems just and proper under the circumstances.

Respectfully submitted August 17, 2011.

_____
Richard H. Hartman, Plaintiff
12528 Shadow Ridge Blvd
Hudson, FL 34669
813-486-8287
rick@rickhartman.com

## CERTIFICATE OF SERVICE

UNDER PENALTY OF PERJURY, PLAINTIFF Richard H. Hartman II hereby certifies that he furnished a copy of the forgoing to Robert Handley, Office Manager for Valentine & Kebartas, Inc, 524 Cleveland Blvd, Ste 201, Caldwell, ID 83605, on behalf of all Defendants, via U.S. Mail and email on August 17, 2011.

_____
Richard H. Hartman

From: Rick Hartman <rick@rickhartman.com>
Subject: **Hartman v. Kebartas**
Date: July 8, 2011 3:20:32 PM EDT
To: rhandley@v-k-i.com
Reply-To: rick@rickhartman.com



PLAINTIFF'S
"A"

Mr. Handley,

I never heard back from you regarding the lawsuit as promised.

Please provide me with the contact information for the attorney who will be representing your company in this lawsuit, as I have several documents that I am required to pass on to him or her. Thank you.

Sincerely,

_____

Rick Hartman



Plaintiff's "B"

From: "Handley, Robert" <RHandley@v-k-i.com>
Subject: **RE: Hartman v. Kebartas**
Date: July 8, 2011 5:15:36 PM EDT
To: "'rick@rickhartman.com'" <rick@rickhartman.com>

Mr. Hartman,

I was out of the office yesterday unexpectedly and am back in as of this afternoon. My investigation into all of the allegations in your complaint is not completed yet and I do not expect it to e until Monday afternoon.

If an attorney becomes necessary in the defense of the complaint they would be assigned by our insurance carrier. At this time there is not an assignment of outside counsel. I am the liaison for that type of documentation so please send extra documentation that is necessary to the complaint to me at this email address.

Sincerely,

Robert Handley
Office Manager
Valentine & Kebartas, Inc.
1 (800) 462-4884 ext. 201

**From:** Rick Hartman [mailto:rick@rickhartman.com]
**Sent:** Friday, July 08, 2011 1:21 PM
**To:** Handley, Robert
**Subject:** Hartman v. Kebartas

Mr. Handley,

I never heard back from you regarding the lawsuit as promised.

Please provide me with the contact information for the attorney who will be representing your company in this lawsuit, as I have several documents that I am required to pass on to him or her. Thank you.

Sincerely,

_____
Rick Hartman

FILING FEE     $350.00
SERVICE         60.00
POSTAGE          1.88

PLAINTIFF'S
"C"

AMSCOT
0971327093
Purchaser's Receipt
DATE 06/27/11
AMOUNT Fee: 0.00
T.C. NO. 971327093    $350.00
PAY TO THE ORDER OF
US Dist. Ct
AMSCOT CORPORATION
P.O. BOX 25137
TAMPA, FL 33622-5137

AMSCOT
0851374569
Purchaser's Receipt
DATE 06/27/11
AMOUNT Fee: 0.00
T.C. NO. 851374569    $$60.00
PAY TO THE ORDER OF
Merrill Smagows
AMSCOT CORPORATION
P.O. BOX 25137
TAMPA, FL 33622-5137